

FILED

Jan 17 2019, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Rhonda DeLap Tipton
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Kevin D. Koons
Steven E. Runyan
Kroger Gardis & Regas, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rhonda DeLap Tipton, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Estate of Virginia D. Hofmann, <br> *Appellee-Respondent.* | January 17, 2019 <br><br> Court of Appeals Case No. <br> 18A-EU-1009 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Kevin Barton, Judge <br><br> Trial Court Cause No. <br> 41D01-1505-EU-159 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Rhonda Delap Tipton (Tipton), appeals the trial court's Order on Administrator's Final Account with respect to Appellee-Respondent, the Estate of Virginia D. Hofmann (Estate).

We affirm and remand.

## ISSUES

Tipton presents us with one issue on appeal, which we restate as: Whether the trial court's Order, approving the Final Account, is clearly erroneous.

In its Appellate Brief, the Estate requests an award of appellate attorney fees pursuant to Indiana Appellate Rule 66(E).

## FACTS AND PROCEDURAL HISTORY

Virginia D. Hofmann (Decedent) died testate on March 30, 2015, leaving three surviving children, Tipton, Kenneth DeLap (DeLap), and Denise Webb (Webb), who are each equal one-third residuary beneficiaries of the Estate. On May 27, 2015, Tipton and DeLap filed a petition for unsupervised administration of the Estate and were appointed co-executors, as provided in the Decedent's will. The Estate's assets consisted mainly of non-cash illiquid assets, such as a residence and household goods, as well as a bank account at Horizon Bank, which Decedent held jointly with Tipton and DeLap and which held a balance of approximately $8,300 (Horizon Account). On or about June 26, 2015, Tipton and DeLap opened a bank account on behalf of the Estate at

PNC Bank (PNC Account). Both Tipton and DeLap used the PNC Account and the Horizon Account to pay Estate-related expenses. By August 25, 2015, Tipton and DeLap had each contributed $4,000 of their personal funds to these accounts. In late August 2015, an emotional altercation occurred between Tipton, Webb, and Webb's husband concerning the Decedent's personal property. In response, Tipton filed for—and later dismissed—a protective order against Webb and her husband. Subsequently, on September 3, 2015, the trial court revoked the unsupervised administration of the Estate.

[6] In an effort to work out their differences, the three siblings reached a compromise which culminated in the Family Settlement Agreement (Agreement). This Agreement provided, in pertinent part,

> 2. The Parties agree that the promises and considerations given by each Party are fair and reasonable, and therefore the Estate, [Tipton], [DeLap], and [Webb] agree to completely release and forever discharge one another of and from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, loss of service, expenses, compensation of any nature, whatsoever, whether based on tort, contract, or other theory or recovery and whether compensatory or punitive damages which either the Estate, [Tipton], [DeLap], and [Webb] now has or which may hereafter accrue or otherwise be acquired which had resulted or may result from the alleged acts or omissions of the Parties relating to any action taken at any time prior to the date that all Parties have signed this [Agreement] and Mutual Release, including the incident at [Decedent's] residence in late August 2015, between [Tipton], [Webb] and [Webb's husband], and the resulting action of [Tipton] petitioning for an Order of Protection against [Webb] and [Webb's husband] (which was subsequently dismissed by

written request of [Tipton]). This release on the part of the Parties shall be a fully binding and complete settlement among the Parties save only the executory provisions of this [Agreement] and Mutual Release.

* * * *

4. [Tipton] and [DeLap] have loaned the Estate various amounts. Prior to any residuary distribution of the Estate, [Tipton] and [DeLap] shall be reimbursed for any amounts loaned to the Estate.

(Appellee's App. Vol. II, pp. 39-40). On November 30, 2015, the trial court approved the Agreement and allowed Tipton and DeLap to resume the unsupervised administration of the Estate.

[7] On May 17, 2017, the trial court, *sua sponte*, issued an Order for Tipton and DeLap to personally appear as no closing statement for the Estate had been filed within one year of its opening, pursuant to Ind. Code § 29-1-7.5-3.8. After the parties personally appeared on June 19, 2017, the trial court issued an Order finding that the conflict between DeLap and Tipton prevented them from preparing a final account. The trial court removed Tipton and DeLap as co-personal representatives, and appointed Brian J. Deppe as the Administrator Cum Testamento Annexo of the Estate (Administrator). It instructed Tipton and DeLap to provide the Administrator within 30 days with the details for all amounts they contended the Estate owed them. The Order gave the Administrator 60 days to provide the trial court with an account.

On July 10, 2017, Tipton filed a motion to set aside the Agreement, which the trial court denied on August 28, 2017, after conducting an evidentiary hearing. On February 9, 2018, the Administrator filed a verified petition to settle and allow final account, which included both approvals and disapprovals of various amounts that Tipton and DeLap contended the Estate owed them. On March 28, 2018, the trial court conducted a hearing on the objections to the Administrator's final account and issued an Order, providing, in pertinent part:

> 12. [Tipton] identifies the following objections to the Final Account of the [Administrator]:
>     A. Issues pertaining to a refund of fees from Brian Hewitt;
>     B. Issues pertaining to request for compensation for bills, claims and loans; and
>     C. Issues pertaining to the grave marker.
>
> 13. By Order on Attorney Fees dated May 27, 2016, the [c]ourt assessed attorney fees against the claimant, Jann D. Hull, in the amount of One Thousand Thirty-Five Dollars ($1,035.00). The amount was paid to Brian C. Hewitt by the claimant. Mr. Hewitt refunded to the Estate Nine Hundred Ninety Dollars ($990.00) which has been advanced by the Estate. [Tipton] deposited the money personally.
> [Tipton] raises an issue as the [Administrator's] representation that she did not respond to the issue of the refund. By his Response, the [Administrator] acknowledges that the statement that he did not receive a response was in error. However, [the Administrator] correctly notes that "(t)he point was that [Tipton] received funds which should have been deposited in the [E]state's checking account, and she retained them."
>
> 14. The amount due the Estate from [Tipton] is Nine Hundred Ninety Dollars ($990.00). The amount is not reflected in the Final Account. The amount is subject to being equally divided between [Tipton], [DeLap], and [Webb].
>
> 15. [Tipton] seeks reimbursement for the following:

A. payment of "mom's bills" in the amount of Three Hundred Twenty-Nine Dollars and Seventy Cents ($329.70).

B. payment of expenses of the [E]state in the amount of One Hundred Fifty-Five Dollars and Eight-Five Cents ($155.85);

C. payment of personal services provided for cleaning in the amount of Two Thousand Nine Hundred Eight-One Dollars and Seventy-Five Cents ($2,981.71); and

D. repayment of loans in the amount of Sixteen Thousand One Hundred Twenty-Six Dollars and Sixty Cents ($16,126.60).[]

16. As to the request for reimbursement for payment of "mom's bills," the [Administrator] denied payment on the basis that [Tipton] did not file a claim. In the absence of a claim, [Tipton] is not entitled to payment for amounts advanced before death under Indiana Code [section] 29-1-14-1(a). The [c]ourt sustains the denial of the request for payment due to the absence of a claim.

17. As to the request for payment of expenses of the [E]state, the [Administrator] denied payment for lack of sufficient documentation, some accounts were pre-death and payment was waived by the [Agreement].

* * * *

19. [Tipton] presents no evidence of any amounts subject to reimbursement subsequent to the order accepting the [Agreement] on November 30, 2015. Amounts incurred prior to November 30, 2015 would either be subject to the bar for failure to file a claim or would be barred by the [Agreement].

20. [Tipton] seeks reimbursement for amounts paid for cleaning services or for personal services. [DeLap] acknowledges that the requests for reimbursement of four bills in the total amount of Ninety-Five Dollars and Fifty Cents ($95.50) are appropriate. The date of service was subsequent to the [Agreement] and accordingly not barred by the [Agreement].

21. As to the remaining amounts requested, the amounts are not documented. [Tipton] seeks payment for services that she provided in the amount of Two Thousand Five Hundred Dollars ($2,500.00). However, [Tipton] does not provide any time records to support her request.

22. [Tipton] is allowed reimbursements for cleaning in the amount of Ninety-Five Dollars and Fifty Cents ($95.50). [Tipton's] request for reimbursement is otherwise denied.

23. [Tipton] seeks reimbursement for loans. Some of the loans for which reimbursement is sought have been allowed by the [Administrator]. The request for one-half of the joint bank account in the amount of $3,689.00 is dealt with separately. The loans at issue are in the amount of $112.00, $200.00 and $80.00. The [c]ourt does not find evidence to support loans. Reimbursement of the loans of $112.00, $200.00 and $80.00 is denied.

24. [Tipton] lastly raises the issue of the grave marker.

* * * *

26. It was the intent of the December 5, 2017 Order that the design be finalized on the basis of [Tipton's] design. While any differences between the design as set by Forest Lawn and [Tipton's] final version may be minor, [Tipton] disputes that the result was consistent with her artistic standards. The intent was to remove [the Administrator] from the design process and without requirement of exercising any judgment.

27. [Tipton will have [a] period of sixty (60) days to obtain and have installed a grave marker through Forest Lawn Cemetery or another company that Forest Lawn Cemetery will permit to be installed in the cemetery in accordance with the design that she filed on December 27, 2017. The cost may be up to the cost of the grave marker obtained through Forest Lawn.

* * * *

Distribution shall be made as follows:
D. [Tipton]: repayment of loans/advances:

> 1) $4,337.50 (paragraph 6(C)(1) of Final Account based upon testimony [])
> 2) $753.83 (Paragraph 6(C)(2) of Final Account)
> 3) $95.50 Reimbursement for cleaning services
> Total: $ 5,186.83.
>
> * * * *
>
> I. [Tipton]: $49,165.41 (1/3rd of residuary estate).

(Appellee's App. Vol. II, pp. 19-25).

[9] Tipton now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Trial Court's Order*

[10] A careful reading of Tipton's appellate brief indicates that Tipton is requesting this court to review the trial court's Order and to close the Estate "correctly" by granting her claim for reimbursement of $9,009.86. (Appellant's Br. p. 4). An appellant who proceeds *pro se* is "held to the same established rules of procedure that a trained legal counsel is bound to follow and, therefore, must be prepared to accept the consequences of his or her actions." *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003). While we prefer to decide cases on their merits, we will deem alleged errors waived where appellant's noncompliance with the rules of appellate procedure is so substantial it impedes our appellate consideration of the errors. *Id.* The purpose of our appellate rules, especially Indiana Appellate Rule 46, is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case. *Id.*

Here, Tipton's appellate brief fails to comply in virtually every respect with Indiana Appellate Rule 46. Tipton violates Appellate Rule 46(A)(2) by omitting the table of authorities, presumably because she fails to cite to any authorities in her brief. The brief violates Appellate Rule 46(A)(4) by only including arguments and self-serving facts in her statement of the issues. Tipton's nature of the case description, statement of facts, and summary of the argument pursuant to Appellate Rule 46(A)(5);-(6);-(7) are completely non-existent and missing from her appellate brief. Although Tipton's brief fails to include a separate argument section as required by Appellate Rule 46(A)(8), it could be argued that the section titled "Issues" presents Tipton's analysis. However, Tipton fails to support her bare assertions with cogent reasoning, citations to the record, or to legal authorities. One of her allegations is articulated as follows:

> Financial issues listed in the "Final Account" (see copy, marked and delineated, # 12, 12a – 12g) are corrected point by point, also "Chargeable and Credits" #12 h-n). Spread sheets of financial loans to be reimbursed are enclosed (#13 a – d). Support materials are also copied and attached (#14, 14a-r) to prove [the Administrator's] mistakes.

(Appellant's Br. p. 4). The documents she is referring to are not enclosed in her Appendix; rather, her Appendix merely consists of two letters that she sent to the trial court. She did not submit the materials admitted before the trial court, nor did she request the transcript of the proceedings and therefore, none has been provided. Even though she appears to entreat this court to award her a

certain reimbursement amount, she fails to include the details or materials which would support the calculation and origin of this amount.

[12] "A brief is not to be a document thrown together without either organized thought or intelligent editing on the part of the brief-writer." *Frith v. State*, 325 N.E.2d 186, 189 (Ind. 1975). "It is well-settled that the duty of presenting a record adequate for intelligent appellate review on points assigned as error falls upon the appellant, as does the obligation to support the argument presented with authority and references to the record pursuant to Indiana Appellate Rule 46(A)(8). *AutoXchange.com, Inc. v. Dreyer & Reinbold, Inc.*, 816 N.E.2d 40, 44 (Ind. Ct. App. 2004). Because Tipton's contentions are too poorly expressed and developed to be understood, it has prevented our appellate analysis and consideration of her alleged errors. *See Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005) (noting that the failure to present a cogent argument or citation to authority constitutes waiver of the issue for appellate review), *trans. denied*. "While we are often tolerant of minor infractions of the appellate rules so that we may decide appeals on their merits, those rules are nonetheless binding on all persons bringing appeals to this court." *Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d 486, 490 (Ind. Ct. App. 2003). In the instant case, because Tipton's noncompliance with the appellate rules substantially impeded us from reaching the merits of this appeal, we are compelled to find the issue waived.

## II. *Appellate Attorney Fees*

[13] In its appellate brief, the Estate requests this court to award it attorney fees incurred in defending against Tipton's appeal and "to charge them against Tipton's distributive share of the Estate's assets for her frivolous and bad faith appeal." (Appellee's Br. p. 26).

[14] Indiana Appellate Rule 66(E) provides, in pertinent part, "[t]he Court may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited, however, to instances where an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Thacker*, 797 N.E.2d at 346. Additionally, while Indiana Appellate Rule 66(E) provides this court with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Tioga Pines Living Ctr., Inc. v. Ind. Family and Soc. Servs. Admin*, 760 N.E.2d 1080, 1087 (Ind. Ct. App. 2001), *trans. denied*.

[15] Indiana appellate courts have formally categorized claims for appellate attorney fees into "substantive" and "procedural" bad faith claims. *Boczar v. Meridian Street Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001). To prevail on a substantive bad faith claim, the party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.* Procedural bad faith, on the other hand, occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a

manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id*. Finally, we note that even *pro se* litigants are liable for attorney's fees when they disregard the rules of procedure in bad faith. *Thacker*, 797 N.E.2d at 347.

[16] As pointed out, Tipton's brief violates all provisions of Indiana Appellate Rule 46(A). Her non-compliance with our appellate rules of procedure permeates her entire brief, and precludes our review of her allegations of error on appeal. Keeping in mind our duty to use great restraint when determining that an award of appellate attorney fees is warranted, we nonetheless find that such an award is appropriate under the facts of this case. *See id*. at 348. Finding Tipton to have engaged in procedural bad faith before this court, we remand this cause to the trial court with instructions to calculate the amount of appellate attorney fees the Estate is entitled to recover.

## CONCLUSION

[17] Based on the foregoing, we hold that Tipton has waived the issue she raised before this court because her brief is not in compliance with Indiana Appellate Rule 46(A). Moreover, we find that Tipton has engaged in procedural bad faith in her pursuit of this appeal, and appellate attorney fees should therefore be assessed against her share of the Estate.

[18] Affirmed and remanded.

[19] Kirsch, J. and Robb, J. concur