

IN THE

# Court of Appeals of Indiana

Correct Roofing, Inc.,

*Appellant-Plaintiff / Counterclaim-Defendant*

v.

Alfredo Vasquez,

*Appellee-Defendant / Counterclaim-Plaintiff*

FILED

Oct 18 2024, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



October 18, 2024

Court of Appeals Case No.
23A-CT-2535

Appeal from the Elkhart Superior Court

The Honorable Christopher J. Spataro, Judge

Trial Court Cause No.
20D05-2107-CT-141



**Opinion by Judge May**
Judges Vaidik and Kenworthy concur.

**May, Judge.**

Correct Roofing, Inc., ("Correct Roofing") appeals following the trial court's order granting Alfredo Vasquez's motion for summary judgment and entering a judgment in favor of Vasquez for $23,040.00. Correct Roofing presents two issues for our review, which we revise, restate, and reorder as:

> 1. Whether the trial court erred by striking portions of an affidavit and exhibits Correct Roofing submitted in opposition to Vasquez's motion for summary judgment; and
>
> 2. Whether the trial court erred by granting Vasquez's motion for summary judgment.

We affirm.

## Facts and Procedural History

In June 2019, a hailstorm damaged the roof of Vasquez's house in Goshen, Indiana. After the storm, Correct Roofing canvased Vasquez's subdivision and solicited residents to hire Correct Roofing to repair the damage to their homes. Vasquez agreed to hire Correct Roofing, and the parties executed a contract on June 29, 2019. The contract listed a total estimated cost of $10,415.10 to repair Vasquez's roof. The contract also stated:

> Terms: This agreement is for FULL SCOPE OF INSURANCE PROCEEDS and is subject to insurance company approval and does not obligate homeowner or Correct Roofing, Inc. unless repairs are approved by homeowners' insurance company. By

signing this agreement the homeowner authorizes Correct [Roofing] to pursue homeowners' best interest for all repairs at a price agreeable to the insurance company and Correct [Roofing] at <u>NO ADDITIONAL COST TO THE HOMEOWNER EXCEPT FOR THE INSURANCE DEDUCTIBLE</u>.  The final price agreed on between the insurance company and Correct [Roofing] shall become the final contract price of: FULL SCOPE OF INSURANCE PROCEEDS.  The specifications set out herein and on the reverse side hereof to accomplish the replacement or repair.

I hereby authorize Correct Roofing, Inc. to negotiate directly with my insurance company for all property damage repairs at the above address and hereby grant power of attorney to the same to act as my agent to negotiate property damage claim settlement.  Correct Roofing, Inc. is hereby authorized to perform at their discretion all insurance prescribed repairs for the price of full scope of insurance proceeds agreed upon by my insurance company and Correct [Roofing].  The terms and specifications stated herein and special conditions following hereof are by [sic] accepted.  I hereby authorize my Insurance company and/or mortgage company to make payment for completed repairs directly to Correct Roofing, Inc. and mail directly to the same.

(App. Vol. 2 at 64.)

[3]     On August 11, 2019, Erie Insurance sent Vasquez a letter discussing his claim. The letter explained:

The breakdown of the loss is as follows:

* * * * *

Replacement Cost of Repair:   $10, 415.10
Less Deductible:   $(500.00)
Total Claim:   $9,915.10
Less Recoverable Depreciation:   $5,583.71
Actual Case Value:   $4,331.39

> Although your policy is a replacement cost policy, your claim is being settled on an Actual Cash Value (ACV) basis. ACV equals the replacement cost value less depreciation. By policy we owe the ACV of the repairs or items needing replacement until they are repaired or replaced as stated under the Loss Settlement provisions of your policy.

> In order to process your replacement cost claim, we will need original receipts for the repair and/or replacement. We may also require an inspection of the completed repairs or replacement.

(*Id*. at 67.) Vasquez paid the $4,331.39 actual cash value insurance proceeds to Correct Roofing.

[4] Correct Roofing did not properly repair Vasquez's roof, and after Correct Roofing finished its work on Vasquez's roof, the roof leaked. The leaks resulted in damage to the interior of Vasquez's house. Vasquez attempted to contact Correct Roofing to discuss the faulty repairs, but Correct Roofing would not return his phone calls. Vasquez subsequently hired Gonzalez Construction ("Gonzalez") to correctly repair the roof. Gonzalez removed the lower sub-roofing/roof decking along the base of the entire perimeter of Vasquez's roof and installed new decking, shingles, gutters, and fascia. Gonzalez charged

Vasquez $7,000.00 for those repairs. Gonzalez also estimated that it would cost $9,800.00 to repair the drywall and interior damage to Vasquez's house.

[5] On July 9, 2021, Correct Roofing filed a complaint against Vasquez alleging claims for breach of contract and quantum meruit. The complaint alleged Vasquez agreed to pay Correct Roofing $10,415.10 to repair his roof and Vasquez did not pay Correct Roofing that amount after Correct Roofing had completed its work. On September 13, 2021, Vazquez filed his answer and counterclaims against Correct Roofing. Vasquez denied the material allegations in Correct Roofing's complaint and asserted claims for breach of contract, violation of the Home Improvement Contracts Act ("HICA"), Ind. Code § 24-5-11-1 *et. seq.*, and violation of the Home Improvement Warranties Act, Ind. Code § 32-27-1-1 *et. seq.*, against Correct Roofing. Vasquez alleged Correct Roofing improperly repaired his roof after receiving $4,331.39 and refused to remediate its faulty work.

[6] On February 17, 2022, Vasquez served Correct Roofing with requests for admission. Those requests stated:

> **REQUEST FOR ADMISSIONS NO. 1.** Correct [Roofing] is an Indiana corporation located in La Porte, Indiana.
>
> **RESPONSE:**
>
> **REQUEST FOR ADMISSIONS NO. 2.** Mr. Vasquez paid Correct [Roofing] $4,331.39.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 3.** Correct [Roofing] did not properly repair the Property's roof.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 4.** Correct [Roofing] did not return phone calls to Mr. Vasquez regarding his notice that Correct [Roofing] improperly repaired the Property's roof.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 5.** Correct [Roofing] did not perform additional services for Mr. Vasquez after he notified it of his claim that Correct [Roofing] improperly repaired the Property's roof.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 6.** Correct [Roofing] is a real property improvement supplier under Indiana Code 24-5-11-6.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 7.** Correct [Roofing] is a remodeler under Indiana Code 32-27-1-10.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 8.** Correct [Roofing] solicited Mr. Vasquez to repair the roof for the Property after a storm damaged the roof.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 9.** A complete and accurate copy of the contract between Correct [Roofing] and Mr. Vasquez is attached as Exhibit A to these [R]equests for Admission.

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 10.** The Contract attached as Exhibit A does not list an email address for, or on behalf of, Correct [Roofing].

**RESPONSE:**

**REQUEST FOR ADMISSIONS NO. 11.** Correct [Roofing] was required by statute to warrant the roof and roof system of the Property from defects in materials and workmanship for four years from the date Correct [Roofing] last performed work at the Property.

**RESPONSE:**

(*Id.* at 41-44.) Vasquez also served Correct Roofing with interrogatories and requests for production. Correct Roofing did not respond to the requests for admission, and on March 30, 2022, Vasquez filed a motion to admit the requests for admission. The trial court granted Vasquez's motion on April 1,

2022. On April 15, 2022, Correct Roofing emailed Vasquez the company's responses to the interrogatories and requests for production.

[7] On August 16, 2023, Vasquez filed a motion for summary judgment. Vasquez asserted Correct Roofing breached its contract with Vasquez by failing to correctly repair the roof and by attempting to hold Vasquez responsible for the full cost of repair rather than working with Vasquez's insurance company as provided in the contract. Vasquez also argued Correct Roofing violated HICA by not including an email address in the contract and not curing its faulty work within thirty days.[1]

[8] Correct Roofing filed its response in opposition to Vasquez's summary judgment motion on September 13, 2023, and Correct Roofing designated an affidavit from Tyrone Murray. In the affidavit, Murray averred:

> 1. I am over 21 years of age and competent to testify.
>
> 2. I have personal knowledge of all the matters that I now give testimony to.
>
> 2. It is stated, falsely, in the summary judgment motion and supported filings that Correct Roofing offered to do "roof repairs for a great deal" and that Correct would collect its payment from

---

[1] Vasquez's summary judgment motion did not reference his allegation that Correct Roofing also violated the Home Improvement Warranties Act, and Vasquez appears to have abandoned that claim.

the insurance and only charge the homeowner for the cost of their insurance deductible.

3. Correct never promised it would do roof repairs for a great deal and collect payments from the insurance.

4. To be clear, the insurance company settles the claim with us for an agreeable price and sends the payment to the homeowner who then is supposed to pay us. The deductible is the homeowners responsibility.

5. Correct entered into the agreement with Alfredo Vasquez to replace the roof if possible.

6. It was explained through Mr. Vasquez's son, due to language barrier, that his roof damage was marginal and we weren't making any promises the insurance company would pay for it.

* * * * *

8. The amount collected from the Vasquez's was $4331.39.

9. It's a false statement that repairs were not done correctly. Roof repairs were done properly.

(*Id*. at 106-07) (errors in original, including the duplicative numbering of paragraph 2). Murray also stated in the affidavit that Vasquez tried to get Correct Roofing to perform additional work for free and refused to pay Correct Roofing when Correct Roofing declined to perform the additional work. Attached to Murray's affidavit was a picture of a house labeled as Exhibit A, purported email correspondence labeled as Exhibits B and C, and a purported

document from the City of Goshen's Building Department. Correct Roofing asserted that the statements in Murray's affidavit created genuine issues of material fact that precluded summary judgment.

[9] On September 19, 2023, Vasquez filed a motion to strike Murray's affidavit and the associated exhibits. Vasquez asserted:

> The affidavit of Tyrone Murray is hearsay. Mr. Murray is not a party to the lawsuit. The affidavit does not provide any foundation showing he has the authority to make admissible and authoritative statements relevant to the case. The affidavit contains hearsay and hearsay within hearsay . . . The affidavit includes speculation and opinion testimony, which Mr. Murray is not entitled to make. The affidavit contradicts and disputes facts deemed admitted by this Court. The affidavit is unreliable and should not be relied upon by this court.

> Exhibit A, which appears to be a picture of a house, lacks foundation and is inadmissible. Exhibit B is inadmissible hearsay. Exhibits C and D lack foundation, are also inadmissible hearsay and were never produced to Mr. Vasquez in discovery.

(*Id*. at 101.) Vasquez also filed a reply in support of his motion for summary judgment arguing that Correct Roofing's response rested upon inadmissible evidence and represented an impermissible attempt to create genuine issues of material fact by contradicting facts that were previously deemed admitted.

[10] On October 3, 2023, the trial court held a hearing on Vasquez's motion to strike and his motion for summary judgment. At the hearing, the parties discussed the requests for admission, and Correct Roofing contended that it had produced

its responses to the requests for admission when it had produced its other discovery responses. The trial court reviewed the email Correct Roofing sent to Vasquez with its discovery responses attached. The trial court noted Correct Roofing sent the email after the trial court had entered its order deeming the requests for admission admitted and that the email did not reference responses to requests for admission. The trial court also noted Correct Roofing never moved to withdraw the admissions between when the court entered the order in April 2022 and the summary judgment hearing.

[11] The trial court granted Vasquez's motion to strike from the bench. The trial court explained:

> I find that there are several reasons to grant the Defendant's Motion to Strike. One is that we have admitted items which are then contradicted and there is case law that will indicate that . . . a party cannot put forth self-serving affidavits in the future that contradict whether it's deposition testimony or other facts that have been deemed admitted. So, for that reason at least part of the allegations in the affidavit and the submissions to the Court by the Plaintiff . . . would be either inadmissible or subject to being stricken for [sic] not being considered by the Court.
>
> The other reasons include that . . . we have an affidavit by a person who's not identified as . . . an officer or agent of the company. And while he might have personal knowledge about some things, in order for documents to come into evidence, there needs to be a foundation. And that could be through an . . . 803(B)(6) . . . admission . . . a business record admission or it could be through some other foundation establishing this photo is . . . a fair and accurate representation of the house as it sat on such and such date with such and such factors. And I don't see

the – the requisite foundation so for reasons of . . . contradicting .
. . previously deemed admitted facts, . . . lack of foundation and
to certain paragraphs, hearsay or hearsay within hearsay, I . . .
believe that the Defendant's Motion to Strike needs to be
granted.

(Tr. Vol. 2 at 17-18.)

[12] On October 12, 2023, the trial court issued a written order granting Vasquez's motion for summary judgment. The trial court ruled Vasquez was entitled to summary judgment with respect to Correct Roofing's breach of contract claim against Vasquez because there was no dispute that Correct Roofing received the actual cash value insurance proceeds and "[t]here is no evidence of a replacement cost claim made by Correct [Roofing] that was approved by Erie." (App. Vol. 2 at 16.) The trial court also ruled that Correct Roofing breached its contract with Vasquez by improperly repairing his roof and that "Mr. Vasquez did not obtain the substantial benefit of the repairs Correct [Roofing] performed as there were roof leaks and further damage after Correct [Roofing] finished its work." (*Id*. at 18.) The trial court awarded Vasquez damages of $7,000.00 to reimburse him for the cost of hiring Gonzalez to properly repair the roof. In addition, the trial court awarded Vasquez $9,800.00 so that he could repair the damage done to his drywall and the interior of his house. The trial court also found that Correct Roofing's failure to include an email address in its contract

violated HICA.[2]  The trial court declined to award Vasquez treble damages, but the trial court did award Vasquez $6,240.00 in attorney fees.  In total, the trial court entered judgment in Vasquez's favor for $23,040.00.

## Discussion and Decision

### 1. Motion to Strike

[13]  Correct Roofing asserts the trial court erred by granting Vasquez's motion to strike.  We review a trial court's ruling on a motion to strike for an abuse of discretion.  *Luse Thermal Tech., LLC v. Graycor Indus. Constructors, Inc.*, 221 N.E.3d 701, 710 (Ind. Ct. App. 2023), *trans. denied*.  "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it."  *Id.* at 710-11.  Indiana Trial Rule 56(E) governs the material a party may designate at summary judgment and states: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  "The affidavit requirements of Trial Rule 56(E) are mandatory and . . . [t]he party offering the affidavit into evidence bears the burden of establishing its admissibility."  *D.H. by A.M.J. v. Whipple*, 103 N.E.3d 1119, 1126 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*.  Thus, the party asking us to reverse a trial

---

[2] *See* Ind. Code § 24-5-11-10(a)(2)(B)(iii) (requiring real property improvement contract entered into after June 30, 2017, to include an electronic mail address maintained and used by the owner, officer, employee, or agent to communicate with consumers).

court's ruling granting a motion to strike must convince us the stricken material satisfied Rule 56(E)'s requirements. *See, e.g.*, *Kader v. Ind. Dept. of Corr.*, 1 N.E.3d 717, 725 (Ind. Ct. App. 2013) (holding affidavit submitted by plaintiff should not have been stricken because it was based on the personal knowledge of the affiant and stated facts which would be admissible in evidence).

[14] However, we will not invent arguments on the challenging party's behalf. *See Applegate v. State*, 230 N.E.3d 944, 952 (Ind. Ct. App. 2024) ("it is not appropriate for this Court to make that argument on [appellant's] behalf"), *trans. denied*. Indiana Appellate Rule 46(A)(8)(a) provides that the argument section of an appellant's brief "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning." The appellant must support its contentions by citation to relevant authorities, statutes, and appendices. *Id*. In *Miller v. Patel*, our Indiana Supreme Court expounded on the importance of these requirements:

> The purpose of our appellate rules, Ind. Appellate Rule 46 in particular, is to aid and expedite review and to relieve the appellate court of the burden of searching the record and briefing the case. We will not step in the shoes of the advocate and fashion arguments on his behalf, nor will we address arguments that are too poorly developed or improperly expressed to be understood. The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but instead are tasked with solving disputes as arbiters of legal questions **presented** and **argued** by the parties before them. . . . We do **not** exist to answer every legal question that may exist in the ether; rather, we resolve concrete issues properly tested through the adversarial process: adequate and

cogent briefing is required for that process to live up to its potential.

212 N.E.3d 639, 657 (Ind. 2023) (emphasis in original) (internal quotation marks and citations omitted). Consequently, "[w]hile we prefer to decide cases on their merits, we will deem alleged errors waived where appellant's noncompliance with the rules of appellate procedure is so substantial it impedes our appellate consideration of the errors." *Tipton v. Est. of Hofmann*, 118 N.E.3d 771, 776 (Ind. Ct. App. 2019).

[15]   Here, the trial court granted Vasquez's motion to strike because several of the paragraphs in Murray's affidavit contradicted facts that the trial court had already deemed admitted, numerous paragraphs contained hearsay and hearsay within hearsay, and the affidavit did not lay an adequate foundation to demonstrate the admissibility of its attached exhibits. Correct Roofing does not specifically designate any paragraph that the trial court struck and explain why the trial court erred as to that paragraph. Correct Roofing also does not make any argument related to hearsay nor does it assert the affidavit stated sufficient facts to support admission of the exhibits attached to the affidavit. Correct Roofing states several legal conclusions, but it does not develop arguments in support of its conclusions. For example, Correct Roofing asserts Murray is Correct Roofing's owner and that it "laid an adequate foundation for any personal knowledge and therefore shown he had 'inherent authority.'" (Appellant's Br. at 18.) However, Correct Roofing does not explain how Murray's role as owner gave him personal knowledge of the stricken material in

the affidavit or why the trial court should have reasonably inferred that it did. Likewise, while Correct Roofing complains about Vasquez's use of requests for admission on matters like liability, Correct Roofing does not explain why the trial court's decision to strike the portions of Murray's affidavit that contradicted Correct Roofing's prior admissions was an abuse of discretion. Because Correct Roofing does not present a cogent argument that the trial court abused its discretion by granting Vasquez's motion to strike, we hold Correct Roofing's challenge is waived. *See*, *e.g.*, *Martin v. Hunt*, 130 N.E.3d 135, 138 (Ind. Ct. App. 2019) (holding appellant waived all issues on appeal due to failure to present cogent argument).

## 2. Motion for Summary Judgment

[16] Correct Roofing also asserts that the trial court erred by granting summary judgment in favor of Vasquez. We review a trial court's ruling on a motion for summary judgment de novo. *Miller*, 212 N.E.3d at 644. "Summary judgment is proper only 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting Ind. Trial Rule 56(C)). "We construe the evidence in favor of the nonmovant and resolve all doubts against the moving party." *Bird v. Valley Acre Farms, Inc.*, 177 N.E.3d 459, 466-67 (Ind. Ct. App. 2021). While a trial court's entry of findings of fact and conclusions of law may aid our review, the findings and conclusions do not bind us. *Cranfill v. Ind. Dep't of Transp.*, 209 N.E.3d 450, 453 (Ind. Ct. App. 2023).

[17] Both Correct Roofing and Vasquez alleged that the other party breached the contract that Correct Roofing and Vasquez entered for Correct Roofing to repair Vasquez's roof. Correct Roofing alleged in its complaint that "Vasquez agreed to pay Correct Roofing $10,415.10 for the roof repair." (App. Vol. 2 at 21.) Conversely, Vasquez alleged he paid Correct Roofing $4,331.39, and Correct Roofing failed to correctly repair his roof, and he had to hire a second contractor to remediate Correct Roofing's work and suffered additional damage to the interior of his home. "The essential elements of a breach of contract claim are the existence of a contract, the defendant's breach, and damages to the plaintiff as a result." *Brazier v. Maple Lane Apartments I, LLC*, 45 N.E.3d 442, 455 (Ind. Ct. App. 2015), *reh'g denied*, *trans. denied*. The "party injured by a breach of contract may recover consequential damages from the breaching party." *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012). Consequential damages are those losses flowing naturally and probably from the breach. *Id*. Typically, consequential damages are limited to the non-breaching party's reasonably foreseeable economic losses. *Id*.

[18] Vasquez designated in support of its motion for summary judgment a copy of the contract between Correct Roofing and Vasquez. Correct Roofing attached a copy of the same contract to its complaint, and Correct Roofing does not dispute its accuracy. Looking at the terms of the contract, it did not obligate Vasquez to pay $10,415.10. While the contract listed $10,415.10 as the estimated cost of repair, the contract only obligated Vasquez to pay the full scope of the insurance proceeds he received to Correct Roofing. It stated: "The

final price agreed on between the insurance company and Correct [Roofing] shall become the final contract price of: FULL SCOPE OF INSURANCE PROCEEDS." (App. Vol. 2 at 64.) The contract also authorized Correct Roofing to negotiate directly with Vasquez's insurance company and provided that Correct Roofing was "to perform at their discretion all insurance prescribed repairs for the price of full scope of insurance proceeds agreed upon by my insurance company and Correct [Roofing]." (*Id.*) In addition, the contract allowed Vasquez's insurance company to pay Correct Roofing directly. Thus, the contract only obligated Vasquez to pay Correct Roofing the amount his insurance company agreed to pay out on his claim plus his deductible. Correct Roofing admitted that Vasquez paid it $4,331.39, and pursuant to the terms of the contract, Correct Roofing assumed the obligation to negotiate with Erie to receive further payment.

[19] "In a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner." *Benge v. Miller*, 855 N.E.2d 716, 719 (Ind. Ct. App. 2006). "It is well established that '[w]hen one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date.'" *A House Mechs., Inc. v. Massey*, 124 N.E.3d 1257, 1262 (Ind. Ct. App. 2019) (quoting *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 917 (Ind. Ct. App. 2011)) (brackets in *A House Mechs., Inc.*). We consider several factors in determining whether a breach is material, including:

(A) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(B) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(C) the extent to which the party failing to perform or offer to perform will suffer forfeiture;

(D) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(E) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Ream v. Yankee Park Homeowner's Ass'n, Inc.*, 915 N.E.2d 536, 543 (Ind. Ct. App. 2009), *trans. denied*.

[20] In support of his motion for summary judgment, Vasquez designated Correct Roofing's admission that it "did not properly repair [Vasquez's] roof." (App. Vol. 2 at 73.) Vasquez also averred:

7. After Correct [Roofing] claimed it was done repairing our Home, I discovered many leaks in the newly repaired roof.

8. The leaks caused water damage to the interior of the Home.

9. When I attempted to contact Correct [Roofing] regarding remedying the issues from their work on our Home[,] Correct [Roofing] did not respond to my communications.

10. We hired a new contractor, Gonzalez Construction, to repair, remedy, and complete the work performed by Correct [Roofing] on our Home. I also requested that Gonzalez Construction provide me with an estimate to repair the water damage caused by Correct [Roofing's] repairs to our Home.

11. Gonzalez Construction was paid $7,000 to repair, remedy, and complete the work performed by Correct [Roofing]. Gonzalez Construction estimates that the cost to fix the interior damage to the Home caused by Correct [Roofing] is estimated to be $9,800.

(*Id*. at 80-81.) In addition, Vasquez designated an affidavit from Jose Gonzalez, the owner of Gonzalez Construction. Gonzalez stated in his affidavit:

5. Mr. Vasquez hired Gonzalez Construction to remedy and repair the damage to his Home that was caused by improper construction and repairs of a prior roofing contractor.

6. Gonzalez Construction was paid Seven Thousand Dollars ($7,000) to make those exterior repairs to the Home. A true and accurate copy of the original Quote for the work is attached as Exhibit A.

7. Gonzalez Construction had to replace lower levels of shingles and OSB sub roofing around the perimeter of the house, replace wood around the exterior of the house, install gutters, and change the fascia.

8. I also observed water damage to the interior of the Home caused by the faulty repairs of the prior contractor.

9. After inspecting the Home, I estimate that the cost to repair the interior damage caused by the work of the prior contractor is Nine Thousand Eight Hundred Dollars ($9,800). A true and accurate copy of the quote I provided Mr. Vasquez on behalf of Gonzalez Construction is attached as Exhibit B.

(*Id*. at 92-93.)

[21] Vasquez reasonably expected to have Correct Roofing properly repair his roof for the full scope of his home insurance proceeds. However, after Correct Roofing performed work on Vasquez's roof, the roof developed leaks that damaged the interior of his home. Correct Roofing refused to return Vasquez's phone calls and remediate its faulty work. As a result, Vasquez had to hire a second company to perform the work he expected Correct Roofing to perform and repair the damage to the interior of his home that resulted from Correct Roofing's faulty work. Thus, Vasquez's designated evidence demonstrates that Correct Roofing's failure to correctly repair Vasquez's roof constituted a material breach. *See*, *e.g.*, *A House Mechs., Inc.*, 124 N.E.3d at 1263 (holding contractor materially breached contract by failing to comply with building code). Correct Roofing bore the obligation of countering Vasquez's motion with properly designated evidence demonstrating a genuine issue of material

fact, but it did not do so.[3]  *See Sheehan Const. Co., Inc. v. Continental Cas. Co.*, 938 N.E.2d 685, 689 (Ind. 2010) ("Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial.").  Because Vasquez established as undisputed material facts that he performed his obligations under the contract up to Correct Roofing's material breach of the contract and he was harmed by Correct Roofing's material breach, we affirm the trial court's entry of summary judgment in Vasquez's favor on each breach of contract claim.[4]  We also affirm the trial court's $16,800.00 damages award on Vasquez's breach of contract claim because Correct Roofing did not designate any evidence to challenge Vasquez's designated evidence regarding the cost of repairs.  *See, e.g.*, *Five Star Roofing Sys., Inc. v. Armored Guard Window & Door Grp., Inc.*, 191 N.E.3d 224, 238 (Ind. Ct. App. 2022) (holding roofing subcontractor materially breached contract and awarding damages to contractor in amount required to hire second subcontractor), *reh'g denied*.

---

[3]Because we affirmed the trial court's decision granting Vasquez's motion to strike, Correct Roofing may not rely on the stricken statements to create a genuine issue of material fact.

[4] In addition, Correct Roofing's quantum meruit claim fails as a matter of law because quantum meruit is essentially "the remedy for breach of a constructive contract, implied in law." *Luse Thermal*, 221 N.E.3d at 718.  "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992), *trans. denied*.  Here, there was no constructive contract because the written contract between Vasquez and Correct Roofing expressly controlled Correct Roofing's work on Vasquez's house.

With respect to Vasquez's HICA claim, Indiana Code section 24-5-11-10(a)(2)(B)(iii) requires that a real property improvement contract include an email address maintained by the company to communicate with customers. Indiana Code section 24-5-11-14 provides: "A real property improvement supplier who violates this chapter commits a deceptive act that is actionable by the attorney general or by a consumer . . . and is subject to the remedies and penalties under IC 24-5-0.5." One of those remedies is an award of reasonable attorney fees. Ind. Code § 24-5-0.5-4. Correct Roofing admitted that it was a real property improvement supplier, and its contract with Vasquez did not list an email address. That failure made it more difficult for Vasquez to contact Correct Roofing about the faulty repairs. Vasquez's attorney submitted an affidavit attesting that his firm had charged Vasquez $6,240.00 in fees related to the prosecution of his case, and Correct Roofing did not designate any evidence challenging that amount. Therefore, Vasquez was also entitled to summary judgment on his claim under the Indiana Home Improvement Contract Act and an award of attorney fees in the unchallenged amount designated. *See, e.g.*, *Mullis v. Brennan*, 716 N.E.2d 58, 66-67 (Ind. Ct. App. 1999) (holding contractor did not comply with HICA and affirming award of attorney fees).

## Conclusion

Correct Roofing waived its challenge on appeal to the trial court's order granting Vasquez's motion to strike by failing to provide a cogent argument as required by Indiana Appellate Rule 46. In addition, there is no dispute of material fact that Vasquez performed his obligations under the contract and

Correct Roofing did not, that Vazquez's damages were as the trial court determined, or that Correct Roofing violated HICA. Accordingly, we affirm the trial court's judgment in favor of Vasquez.

[24] Affirmed.

Vaidik, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Johnny W. Ulmer
Ulmer Law Offices
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Andrew M. Hicks
Jamie R. Richardson
Warrick & Boyn, LLP
Elkhart, Indiana