FILED

May 23 2019, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Clinton E. Blanck
Blanck & Rubenstein, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Scott D. Pankow
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A House Mechanics, Inc., <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Michael Massey, <br> *Appellee-Defendant* | May 23, 2019 <br><br> Court of Appeals Case No. <br> 18A-PL-2814 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Timothy W. Oakes, Judge <br><br> Trial Court Cause No. <br> 49D02-1609-PL-33823 |

**Baker, Judge.**

[1] A House Mechanics, Inc. (AHM), appeals the trial court's order granting summary judgment in favor of Michael Massey on AHM's complaint. AHM argues that there are genuine issues of material fact related to its claims for breach of contract and foreclosure on a mechanic's lien rendering summary judgment improper. Finding no error, we affirm.

## Facts

[2] Massey owns a residence and other structures on Sloan Avenue in Indianapolis. On June 6, 2016, Massey and AHM entered into a contract, pursuant to which AHM would remove and replace the roofs on all of Massey's buildings and install new siding and gutters on some. On June 15, 2016, Massey made a down payment of $12,000 and AHM began work. The contract required that AHM would "comply with all applicable building codes." Appellant's App. Vol. II p. 23.

[3] Massey began to notice multiple problems with the work being performed by AHM. He met repeatedly with Richard Hathaway, AHM's president, to express concerns and point out things that needed to be repaired.

[4] On June 18, 2016, Massey confronted Hathaway with more issues, explaining that simply covering up the problem areas with shingles would not solve the underlying defects and noting that the defects could not be repaired once covered with shingles. Hathaway denied that there were any problems and refused to make repairs. Massey asked to see Hathaway's insurance policy and bond information; Hathaway refused, said he was done working on that job,

and stated he intended to take the building materials and leave. Massey responded that Hathaway could not take the materials because Massey had already made a $12,000 down payment. Hathaway then threatened to harm Massey physically and take his family's home. Massey told Hathaway to leave; Hathaway called the police.

[5] Officers arrived and threatened to arrest Hathaway unless he calmed down. Massey and the officers tried to convince Hathaway to make the needed repairs, finish the job, and move on, but Hathaway refused. The officers told Hathaway to leave. On his way out, Hathaway told Massey to call the City Inspector, commenting that "'when it passes the inspection, I will take your house.'" *Id.* at 129.

[6] On June 23, 2016, the City of Indianapolis Department of Code Enforcement issued a Notice of Violation listing multiple violations related to the construction work on Massey's property. The next day, the same department issued an Order to Stop Work, demanding that all work on that site stop because AHM had failed to notify the Bureau of Construction Services before starting construction and had failed to post a contractor form at the work site.

[7] On June 24, 2016, Massey, via counsel, demanded that AHM return the $12,000 down payment. On June 27, 2016, AHM responded by sending Massey an invoice for $6,197.94, which AHM claimed was the remaining amount owed by Massey after applying the down payment. On June 29, 2016, AHM recorded a mechanic's lien on Massey's property.

[8] On August 13, 2016, AHM filed a complaint against Massey, seeking damages for breach of contract and/or to foreclose on the mechanic's lien. On November 4, 2016, Massey filed an answer denying that he had breached the contract and denying that the work done by AHM had added any value to Massey's property. He also filed a counterclaim, alleging that AHM had slandered his title, abused the legal process by filing and seeking to foreclose on a mechanic's lien, violated the Indiana Home Improvement Contracts Act (HICA), and breached statutory home improvement warranties.[1]

[9] On September 7, 2018, Massey moved for summary judgment, alleging that (1) there was no genuine issue of material fact that AHM had committed the first material breach of the parties' contract, meaning that AHM is not entitled to enforce the contract against Massey; and (2) AHM had failed to prove that its work added any value to Massey's property as required under the mechanic's lien statute. The trial court granted summary judgment in Massey's favor on October 29, 2018. In pertinent part, it found and held as follows:

*Findings of Fact*

\*\*\*

4.      Massey paid [AHM] a $12,000.00 down payment on June 15, 2016. [AHM], after taking the above-referenced down payment, walked off the job on June 18, 2016 when

---

[1] Massey also later filed a third-party complaint against Western Surety Company, which was AHM's commercial liability insurer. Western Surety Company is not part of this appeal.

confronted about the defective quality of the work to that date.

5.  [AHM] refused to correct the defective work and called the police. The police arrived and attempted to convince both parties to agree to allow [AHM] to complete the job and make needed repairs. Massey agreed to allow the repair attempt but [AHM] refused to do any further work, refused to return any portion of the down payment, and refused to leave any of the materials for the job with Massey, taking them with him when he walked off the job.

6.  The home improvement repair job promised by [AHM] was inspected by the City of Indianapolis Code Enforcement on June 24, 2016 and a Notice of Violation and Order to Stop Work . . . were issued and posted on Massey's property detailing the many code violations found in [AHM's] work by the city inspector.

***

9.  [AHM] recorded the mechanic's lien notice . . . on or about June 29, 2016 despite the fact that none of the materials or services provided by [AHM] added any value to Massey's property and in fact damaged or reduced the value of Massey's property.

10. [AHM] breached its contract to provide home improvement repairs by, among other things, failing, as specifically promised in [its] contract, to comply with applicable building and housing code requirements as evidenced by the Notice of Violation and Order to Stop Work . . . .

11.    Prior to walking off the job, [AHM] threatened to record a mechanic's lien and bring this legal claim in an attempt to coerce Massey to pay additional amounts to which [AHM] had no legitimate legal claim.

\*\*\*

13.    The Court finds that [AHM's] labor and/or materials added no value or improvement to Massey's property and in fact damaged or reduced the value of Massey's property, that the mechanic's lien filed by [AHM] is invalid and should be vacated and released of record.

*Conclusions of Law*

\*\*\*

2.    In order to pursue a claim for breach of contract or right to payment for construction services, [AHM] cannot have first breached the contract itself.

3.    [AHM] has failed in this regard as a matter of law as the Notice of Violation and Order to Stop Work . . . detailing the many code violations found in [AHM's] work by the city inspector establish[] that [AHM] failed to comply with the specific promise in its contract that it would "comply with all applicable building codes."

4.    In regard to the action to foreclose the mechanic's lien that [AHM] recorded against Massey's property, [AHM] has failed to show that [its] "work" added any value to the property as required under the mechanic's lien statute.

Appealed Order p. 2-4 (internal citations and emphases omitted). The trial court granted summary judgment in Massey's favor, noting that it found in Massey's favor on the claims in AHM's complaint and on Massey's counterclaims. The trial court found that Massey's damages totaled the amount of the down payment—$12,000—and entered judgment against AHM in that amount. It also found that the mechanic's lien is invalid. AHM now appeals.

## Discussion and Decision

[10] AHM argues that there are genuine issues of material fact with respect to whether AHM breached the contract first and whether AHM's work added any value to Massey's property. Therefore, AHM maintains that summary judgment should not have been entered in Massey's favor.

[11] Our standard of review on summary judgment is well settled:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

# I. Breach of Contract

[12]  It is well established that "[w]hen one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 917 (Ind. Ct. App. 2011).

[13]  Here, it is undisputed that the parties' contract required AHM to "comply with all applicable building codes." Appellant's App. Vol. II p. 23. It is also undisputed that significant portions of AHM's work on Massey's property did not comply with applicable building codes. Massey designated evidence establishing that he repeatedly noticed problems with AHM's work and brought them to Hathaway's attention; that other people, including two contractors who submitted affidavits in Massey's support, noticed a very long list of violations and problems; and that the city inspector issued a notice of violation, including a long list of defects on site that did not comply with building codes, and a stop work order. This evidence readily shows that from the start of its work on Massey's property, AHM repeatedly and continually breached its contract with Massey.

[14]  AHM has not designated any evidence that tends to dispute the above evidence. Instead, it makes two arguments. First, it points out that the trial court did not consider whether AHM's breach was material. *See Frazier v. Mellowitz*, 804

N.E.2d 796, 804-05 (Ind. Ct. App. 2004) (holding that to award summary judgment, trial court must determine that the undisputed facts establish as a matter of law that the breach was material and it was too late to cure the failure to perform).  Whether a party has materially breached depends on a variety of factors:

> "(1)  The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;
>
> (2)  The extent to which the injured party may be adequately compensated in damages for lack of complete performance;
>
> (3)  The extent to which the party failing to perform has already partly performed or made preparations for performance;
>
> (4)  The greater or less hardship on the party failing to perform in terminating the contract;
>
> (5)  The willful, negligent or innocent behavior of the party failing to perform; and
>
> (6)  The greater or less uncertainty that the party failing to perform will perform the remainder of the contracts."

*Id.* at 802 (quoting *Tomahawk Village Apartments v. Farren*, 571 N.E.2d 1286, 1293 (Ind. Ct. App. 1991)).

[15]   In addition to the evidence described above, Massey designated evidence that Hathaway became unwilling to admit that there were defects; Hathaway refused to fix the remaining defects and became combative, going so far as to call the police and threaten Massey; and the work that AHM had performed on Massey's property actually *decreased* its value.  Initially, we note that it is readily apparent that the toxic breakdown of the relationship between Massey and Hathaway establishes that it was too late for AHM to cure the defects. Moreover, we find that the designated evidence establishes that all of the above factors weigh in Massey's favor.  Under these circumstances, we have little trouble concluding as a matter of law that AHM's breaches were material.  *See Simpson v. OP Prop. Mgmt., LLC*, 939 N.E.2d 1098, 1102 (Ind. Ct. App. 2010) (noting that we may affirm a trial court's ruling on summary judgment on any basis supported by the designated evidence).

[16]   Second, AHM argues that the contract does not say *when* the work must be in compliance with applicable building codes.  In other words, AHM contends that even though its work was defective, and even though it intended to cover up some of the defects with shingles, it had the length of the contract to fix the issues and bring the construction into compliance.  It notes that when Massey asked Hathaway and AHM to leave his property on June 18, 2016, no building code enforcement citations or orders had been issued—that occurred several days later.

[17]   At the outset, it is irrelevant that the notice of code violations was issued after Massey asked AHM to leave his property.  Given that AHM did no work

between June 18 and June 23, when the notice of violations was issued, it is obvious that all the violations existed on June 18. The fact that the actual notice was issued five days later is immaterial.

[18] Furthermore, we will not interpret a contract in a fashion that achieves an absurd result. *E.g.*, *Champlain Capital Partners, L.P. v. Elway Co.*, 58 N.E.3d 180, 190 (Ind. Ct. App. 2016). The term of the contract requiring that the work comply with applicable building codes can only have meant that it must always be in compliance. Obviously, if part of a project were in progress but not yet finished, and it was merely the lack of completion that caused it to be non-compliant, there would be no issue. But that situation is not what we have here. Instead, there were many parts of this construction work that were simply wrong, defective, and/or non-compliant from the outset. To say that this contractual term would permit AHM to do shoddy, defective work until the end of the project, when it then corrected the defects, would be an absurd result.

[19] In the end, we are left with evidence designated by Massey that conclusively establishes that AHM's work was rife with building code violations. The evidence also shows that Hathaway refused to continue working on Massey's property, refused Massey's repeated offers to fix the defects and finish the job, threatened Massey, and became so combative that police officers directed him to leave the property. AHM has not designated any evidence tending to

counter these facts.[2] Therefore, we find that the trial court did not err by finding as a matter of law that AHM breached the contract first and, consequently, was not entitled to enforce the contract against Massey. In other words, the trial court did not err by granting summary judgment in Massey's favor on this issue.

## II. Mechanic's Lien

[20] AHM next argues that the trial court erred by finding that the mechanic's lien was invalid, thereby vacating it. Mechanic's liens are in derogation of common law and we must strictly construe the statutes regulating them. *E.g.*, *Premier Invs. v. Suites of Am., Inc.*, 644 N.E.2d 124, 127 (Ind. 1994). The central purpose of mechanic's lien laws "is to prevent the inequity of a property owner enjoying the benefits of the labor and materials furnished by others without recompense." *Ford v. Culp Custom Homes, Inc.*, 731 N.E.2d 468, 472 (Ind. Ct. App. 2000). The lien exists "to the extent of the value of any labor done or the materials furnished, or both . . . ." Ind. Code § 32-28-3-1(b).

[21] Here, Massey offered two affidavits in support of his contention that the work that AHM performed on his property did not increase the value thereof. Perry Allen, who is the owner of a contracting business, and Paul Palmer, who is the owner of a roofing business, examined the work performed by AHM and

---

[2] AHM points to the fact that Massey asked Hathaway to leave his property first, arguing that this establishes that Massey breached the contract first. We disagree. It was only after Hathaway refused to correct the defects or show Massey AHM's insurance policy and bond information that Massey asked him to leave the property. This evidence does not counter any of the other undisputed evidence regarding the incident.

attested that they were "competent to testify to the matters asserted in this affidavit and have personal knowledge of the matters asserted in this affidavit." Appellant's App. Vol. II p. 60, 63. Both men found that AHM's work was "negligently and carelessly performed and contained many defects;" the affidavits each include a lengthy list enumerating those defects. *Id.* at 60-61, 63-64. They each attested that AHM's work "had no value and added no value to the property. It had to be torn out and made the proper repairs more expensive so that it actually detracted from the value of the property." *Id.* at 61, 64. Massey also provided his own affidavit, attesting that "none of the materials or services provided by [AHM] added any value to Massey's property and in fact damaged or reduced the value of Massey's property." *Id.* at 67.

[22] AHM argues on appeal that the Allen and Palmer affidavits are inadmissible because neither attested that he had knowledge, skill, or experience in evaluating contract work performed by others. Moreover, they did not explain how they arrived at the conclusion that AHM's work added no value to Massey's property.

[23] Initially, we note that AHM did not move to strike or otherwise object to the affidavits. To avoid waiver, a party in summary judgment proceedings who believes that the opposing party has filed a problematic affidavit has a duty to direct the trial court's attention to the allegedly defective affidavit. *E.g.*, *Avco Fin. Servs. of Indianapolis, Inc. v. Metro Holding Co.*, 563 N.E.2d 1323, 1327 (Ind. Ct. App. 1990). "An affidavit which does not satisfy the requirements of T.R. 56(E) is subject to a motion to strike, and formal defects are waived in the

absence of a motion to strike or other objection." *Id.* AHM notes that in its response to Massey's summary judgment motion, it argued that the affidavits were insufficient to support the motion. It maintains that this argument is sufficient to preserve the issue on appeal. We disagree. Making an argument in a brief about the general sufficiency of evidence on summary judgment is not the same thing as moving to strike the affidavit or otherwise raising a specific objection about a defective affidavit. As AHM did not move to strike these affidavits, it has waived the argument on appeal.

[24] Waiver notwithstanding, we note that Trial Rule 56(E) requires that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Here, the affidavits establish that Allen and Palmer based their opinions on personal knowledge and that they are competent to testify. AHM insists, however, that the affidavits are inadmissible because they do not lay a foundation for the two men to be found to be expert witnesses. AHM is correct regarding their qualifications as experts, but it does not matter.

[25] Evidence Rule 701 allows for the admission of opinion testimony by lay witnesses. The opinion must be rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue. Ind. Evidence Rule 701. The requirement that the opinion be "rationally based" on perception "simply means that the opinion must be one that a reasonable person could normally form from the perceived

facts." *Davis v. State*, 791 N.E.2d 266, 268 (Ind. Ct. App. 2003). We find that Allen and Palmer would have qualified as "skilled" lay witnesses, meaning "a person with a degree of knowledge short of that sufficient to be declared an expert under [Ind. Evid.] Rule 702, but somewhat beyond that possessed by the ordinary jurors." *O'Neal v. State*, 716 N.E.2d 82, 89 (Ind. Ct. App. 1999) (internal quotation marks omitted); *see also Satterfield v. State*, 33 N.E.3d 344, 353 (Ind. 2015) (noting that "skilled witness testimony is helpful because it involves conclusions that escape the average observer").

[26] These affidavits show that Allen and Palmer inspected Massey's property after AHM had begun, and prematurely ended, its work. The affidavits also show that both men own businesses in the construction industry. Both men, having inspected the property, concluded that the following defects existed in AHM's work:

- nails sticking through the underlayment;
- the underlayment was not covering the roof completely;
- cuts had been made to the underlayment;
- ice and water shields were improperly installed;
- ice and water shields had been cut, torn, and wrinkled;
- no drip edge on eaves;
- nails blown through shingles;
- nails driven at an angle through shingles;
- improperly flashed dormer walls;
- double layer of shingles;
- improperly nailed flashings;
- improper use of old flashing that had holes;
- shingles were cut;
- decking was blown apart by air gun;

- shingles hanging over too far on eaves;
- shingles nailed in wrong location;
- siding damage on north side of house;
- drive way dammed; and
- failure to follow installation instructions of all roofing materials.

Appellant's App. Vol. II p. 60-61, 63-64. The men noted that the code violations found by the city inspector were consistent with their observations of the property. We find that these facts are sufficient to form a rational basis for the ultimate opinion that AHM's work did not add value to Massey's property. And obviously, their opinions are helpful to a determination of a fact in issue, namely, whether AHM's work added any value to Massey's property. Therefore, even if AHM had moved to strike these affidavits, the trial court would have properly denied the motion and the affidavits would have remained in evidence.

[27] Thus, we are left with Massey's designated evidence, consisting of his own affidavit as well as the affidavits of Allen and Palmer, which shows that AHM's work did not add any value to his property—and may have even *decreased* its value. AHM did not designate any evidence to the contrary. Therefore, there is no genuine issue of material fact and we can only conclude that the trial court did not err by granting summary judgment in Massey's favor on AHM's mechanic's lien claim.

[28] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.